# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **IN RE**: ) | **CHAPTER 13** |
| ) | |
| **LLOYD RAY ROBINSON, JR.** ) | |
| ) | |
| Debtor. ) | **CASE NO. 15-71689** |
| ) | |
| **BAYVIEW LOAN SERVICING, LLC,** ) | |
| ) | |
| Movant ) | |
| ) | |
| v. ) | |
| ) | |
| **LLOYD RAY ROBINSON , JR. and** ) | |
| **CHRISTOPHER T. MICALE,** ) | |
| **TRUSTEE,** ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of the Debtor, Lloyd Ray Robinson, Jr. ("Debtor"), to vacate this Court's dismissal order and reinstate his Chapter 13 case. For the reasons set forth below, the motion will be granted and the case reinstated on the Court's active docket.

## FACTUAL BACKGROUND

The facts in this case are not in dispute.[1] At the time the Chapter 13 petition in this case was filed on December 2, 2015, the Debtor had another Chapter 13 case pending in this same Court, Case No. 11-71146, initially filed on May 24, 2011 ("Case I"). In that case, the Debtor obtained a confirmed plan that required him to make his regular monthly mortgage payment directly to his mortgage lender, Bayview Loan Servicing, LLC ("Bayview"). (Case I, Dkt. Nos.

---

[1] Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact. *See* Fed. R. Bankr. P. 7052, 9014(c).

65, 78). The Confirmation Order in Case I provided that the Chapter 13 Trustee would disburse cure payments on prepetition and postpetition arrearages in the amount of $38,177.59 through his office. In addition, on November 20, 2012, Bayview and the Debtor entered into an agreed order conditioning the automatic stay which provided, among other things, that the Debtor would file a modified plan as provided above and require the Debtor to make his regular monthly payments in a timely manner. In the event the payments were not timely made, notice of default and opportunity to cure would be provided. However, after three notices of default, the fourth event of default would have no further notice and right to cure, and relief from stay would be automatic. (Case I, Dkt. No. 61). Notices of default were filed on May 28, 2014, October 15, 2014, November 14, 2014, and June 19, 2015. After the last notice of default was filed an order was entered on July 21, 2015 granting Bayview relief from stay against the Debtor's residence. (Case I, Dkt. No. 98).

At some point in autumn 2015, Bayview began its foreclosure process, scheduling a foreclosure for December 2, 2015. However, the Debtor completed his plan payments in Case I in October 2015, and on November 4, 2015, the Court entered an Order Releasing Wage Deduction, providing that the Chapter 13 Trustee has reported that the trustee has "sufficient funds on hand with which to pay the case in full." (Case I, Dkt. No. 100). The Order was directed to Debtor's employer, presumably to the address on file. However, notwithstanding entry of the wage deduction cessation order, UPS continued to withhold money from the Debtor's wages and send it to the Chapter 13 Trustee's office. Due to this continued influx of funds, the Chapter 13 Trustee advised the Court that under his procedures, he was unable to file a report of completion of plan payments, which triggers the Debtor to file a Certificate of Compliance with 11 U.S.C. § 1328

-- which, in turn, gives creditors 30 days to object to the Debtor's discharge being granted.  Thus, at the time of the scheduled foreclosure sale, December 2, 2015, even though the Debtor had completed his plan payments over a month prior to the sale -- and due to matters largely out of his control -- the Debtor had not received his Chapter 13 discharge in Case I.  The first case remained open and active on the Court's docket.

When the Debtor first learned of Bayview's scheduled foreclosure is not clear. However, on December 2, 2015 at 10:13 a.m., the Debtor filed a second Chapter 13 case, Case No. 15-71689 (this case or "Case II").  Bayview's pleadings recite that the foreclosure sale was scheduled on December 2, 2015 at 12:30 p.m., after the petition was filed.[2]  Whether Bayview had notice of the second bankruptcy filing is also unclear.  Nevertheless, it proceeded to foreclosure and the property was acquired by a third party at the sale.  The parties advised the Court that a foreclosure trustee's deed has since been recorded.  The third party purchaser has retained counsel and entered an appearance herein.

Local Rule 1017-2 of this Court provides as follows:

> No debtor as defined by 11 U.S.C. §109 or §101(13) may maintain more than one petition under any chapter or chapters of the United States Bankruptcy Code at the same time.
> The second petition filed may be dismissed by the Court *sua sponte* or pursuant to motion of the United States Trustee or any interested party.

U.S. Bankruptcy Court, W.D. Va. Local Rule 1017-2 (October 1, 2014).  Pursuant to the Clerk's Office's established internal procedures, the second filing was referred to chambers, and an order was entered December 4, 2015 dismissing Case II.  The order was entered *sua sponte*, without

---

[2] In addition to the advertising required by the deed of trust, Va. Code § 55-59.1(A) provides that the owner of the property being foreclosed, among others, must be given notice of the sale "no less than 14 days prior to such sale" by certified or registered mail. Va. Code § 55-59.1(A)(2012 Repl. Vol.).  Despite the lead time that the Debtor no doubt had in advance of the sale, he chose to file his new petition a little over two hours before the scheduled sale by Bayview on December 2, 2015.

3

opportunity for hearing. At the time, the Court found it notable in dismissing the second case that on page 2 of the Petition, the Debtor listed "none" in the inquiry where he was asked to disclose "All Prior Bankruptcy Cases Filed Within Last 8 Years." (Case II, Dkt. No. 1).

On December 10, 2015, the Debtor filed a Motion to Vacate Dismissal Order and Reinstate Case, and it was set for hearing on December 21, 2015. The Debtor did not give notice of the hearing to Bayview, and after hearing the positions of the Debtor and the Chapter 13 Trustee, the Court continued the matter to January 11, 2016 and directed that Bayview be given notice of the proceedings.[3] On December 31, 2015, Bayview filed a Motion to Confirm Inapplicability of Stay and Motion to Dismiss and brought its motion before the Court on January 11, 2016 as well. Bayview appeared by counsel on January 11, 2016, and it was at that hearing that the Court first learned the property was sold to a third party purchaser on December 2, 2015.

Subsequent to the second case being filed, the Court became aware of a ruling on December 18, 2015 issued by the Honorable Rebecca B. Connelly, the Chief Judge of this Court, in the matter of *Charisse Nicole Vaughan*, Case No. 12-61986. In that case, when the court learned of a Chapter 13 filing while the debtor still had an active Chapter 7 case pending, the court set the matter for a hearing to determine whether the second case could continue. Ms. Vaughan had received a Chapter 7 discharge in her previous case, and filed the Chapter 13 case while an asset was still being administered in the Chapter 7 case. Applying the holding from *In re Brown*, 399 B.R. 162 (Bankr. W.D. Va. 2009), a ruling of since retired Judge Ross W. Krumm, this Court interpreted the bar on filing pursuant to Local Rule 1017-2 to be limited to cases in which the later petition seeks to discharge the same debts, or materially hinder the administration of the earlier case.

---

[3] The Debtor also moved orally for a temporary injunction against Bayview at the December 21, 2015 hearing to enjoin Bayview from further acts to obtain possession of the property from the Debtor until the Court could act on the Debtor's motion. The Court denied the Debtor's injunction request from the bench at the hearing.

4

The Court permitted the parties to file briefs considering Judge Connelly's ruling and any other authorities they deemed pertinent. The parties have done so and the matter is now ripe for resolution.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (G) and (O).

As stated above, Local Rule 1017-2 of this Court provides that "[n]o debtor . . . may maintain more than one petition under any chapter or chapters of the United States Bankruptcy Code at the same time. The second petition may be dismissed by the Court *sua sponte* . . . ." Loc. R. Bankr. W.D. Va. 1017-2. In *In re Brown*, 399 B.R. 162 (Bankr. W.D. Va. 2009), Judge Krumm of this Court considered this Local Rule. In *Brown*, the debtor, Mr. Brown, filed a second chapter 13 bankruptcy petition while his first chapter 13 case was pending. Mr. Brown filed the second chapter 13 case immediately after the Court granted relief from stay in the first case to the mortgage holder. Mr. Brown filed the second case to stay the mortgage holder and thwart the order that had been entered in the first case. In considering the facts and the relevant law, Judge Krumm determined that "[t]he filing of multiple petitions is not bad faith *per se*." *Id.* at 170 (citing *Downey Sav. & Loan Ass'n v. Metz (In re Metz)*, 820 F.2d 1495, 1497 (9th Cir. 1987); *In re Cushman*, 217 B.R. 470, 476 (Bankr. E.D. Va. 1998)); *see also In re Montes*, 526 B.R. 397, 403 (Bankr. D.N.M. 2015) (holding that there is no *per se* prohibition against the

5

filing of chapter 13 case if the debtor's chapter 7 case had not been closed as long as the debtor received a discharge and the debts did not overlap). Judge Krumm further clarified that "a debtor's second bankruptcy petition must 'not materially hinder the efficient administration of the debtor's estate . . . [and must be] filed in good faith and without an intent to abuse the bankruptcy process.'" *Brown*, 399 B.R. at 170 (quoting *Transamerica Credit Corp. v. Bullock (In re Bullock)*, 206 B.R. 389, 393 (Bankr. E.D. Va. 1997)). The second case was ultimately dismissed as filed in bad faith.

*Brown* is consistent with rulings from other courts that have considered this issue, separate and apart from our Local Rule. There is no provision in the Bankruptcy Code or Bankruptcy Rules that expressly prohibits concurrent bankruptcy filings by the same debtor, and many courts now agree that there is no *per se* rule that prohibits multiple bankruptcy filings. *See Montes*, 626 B.R. 397 and cases cited therein; see also *In re Burnett*, No. 02-84004, 2002 WL 32001418, 2002 Bankr. LEXIS 1314 (Bankr. C.D. Ill. Nov. 19, 2002). As observed in *Burnett*, "the real issue, most of the time, is whether the second case was filed in good faith in light of the pendency of the first case." *Id.* at *1, 2002 Bankr. LEXIS at *2. While many of the cases that address simultaneous filings address a Chapter 7 case followed by a Chapter 13 case while the Chapter 7 case remains open, here the Debtor has two separate Chapter 13 cases pending at the same time. In the first case, the Debtor completed his plan payments approximately three months ago and is awaiting a discharge. The discharge was held up due to a delay in his employer's failure to cease withholding money and sending it to Chapter 13 Trustee. In the meantime, the secured creditor with a deed of trust on his house obtained relief from stay and forged ahead with foreclosure. Had the Debtor attempted to voluntarily dismiss his first case after the secured

creditor obtained relief from stay, he would have been ineligible for refiling for a period of 180 days under 11 U.S.C. § 109(g)(2).   Instead, the Debtor proceeded to complete his plan payments and otherwise comply with the terms of his confirmed Chapter 13 plan in Case I.   The plan paid a 100% dividend to unsecured creditors.

Independent of the issue of good faith and *Brown's* "intent to abuse the bankruptcy process" test, courts generally look to two issues in determining whether concurrent cases can proceed at the same time.   The first is the "single estate rule," which simply provides that the same property cannot be the asset of two bankruptcy estates at the same time.   *Burnett*, 2002 WL 32001418, at *1, 2002 Bankr. LEXIS at *3.   Some courts, like *Burnett*, apply this test to determine whether a concurrent Chapter 13 can proceed, while other courts use it as justification for enforcing a per se rule against such filings.   As Judge Tice in the Eastern District of Virginia observed, the single estate rule "has no foundation in either the language or the legislative history of the Code.   In fact, the rule represents nothing more than a practical, judicial choice among competing philosophies in the face of a void left by Congress."   *Bullock*, 206 B.R. at 393. Some courts question the underpinnings of the rule, and others disagree on its reach.   Many courts also contend that a second filing is not viable if a discharge is not granted in the first case. *See In re Davis,* 239 B.R. 573 (10th Cir. BAP 1999); *In re Turner,* 207 B.R. 373 (2d Cir. BAP 1997). However, most of these cases are ones where the debtor files a Chapter 13 case on the heels of a Chapter 7 case where a discharge was not entered and the case was not closed.   A Chapter 13 case followed by a Chapter 13 case is different matter, especially where the debtor has completed all his plan payments and the entry of the discharge is largely out of his hands.

7

A similar situation to this case was addressed in *Burnett*, where the debtor was in a three year plan and made her final payment in July 2002. On September 4, 2002, she filed a new Chapter 13 plan and the Chapter 13 trustee moved to dismiss the case on the ground the debtor could not maintain the new case as the debtor's first case was still open and she had not received a discharge in that case. The debtor countered that she made all her payments, fulfilled all of her plan requirements, and was otherwise entitled to a discharge. It was simply just slow to issue. *Burnett*, at *1, 2002 Bankr. LEXIS at *2. Applying the single estate rule to these circumstances, the court raised the issue of when the estate in the first case ceased to exist. The court considered the *Matter of Heath*, 115 F.3d 521 (7th Cir. 1997), which analyzed the interplay between 11 U.S.C. § 1327(b), which operates to vest all property of the estate in the debtor upon confirmation, and 11 U.S.C. § 1306(a)(2), which provides that post-petition earnings are property of the estate until the case is closed, dismissed, or converted. *Heath* held that the post-confirmation estate consists of only so much of the debtor's income or other property as is necessary to the fulfillment of the confirmed plan. *Id.* at 524. Thus, *Burnett* held that "[i]t follows that, where confirmation vested all of the property of the estate in the debtor and the payments required under the confirmed plan have been fully paid, the estate, to the extent it continues to exist in theory, contains no property since the debtors current earnings are no longer necessary to the fulfillment of the plan. " *Burnett,* at *1, 2002 Bankr. LEXIS at *4.

Here, assuming without deciding the single estate rule has applicability, the Debtor fits squarely into the *Burnett* analysis. Confirmation of his initial Chapter 13 plan took place in November 2011. From that point on, his bankruptcy estate consisted only of such of his earnings as were necessary to make his payments under that confirmed plan. Once the plan

8

payments were completed by the Debtor, and the trustee acknowledged that he had sufficient funds on hand to satisfy the amount creditors were entitled to receive under the plan, the Debtor's estate did not need to be replenished with additional funds. Thus, the second filing would not violate the single estate rule.

The second issue considered by the courts faced with simultaneous filings is the Supreme Court's ruling in *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925), which is often cited for the principle that a debtor cannot treat the same debt in simultaneous cases. *In re Montes*, 526 B.R. at 401-02; *Burnett*, at *2, 2002 Bankr. LEXIS at *5. As observed in *Burnett*, the *Atkins* rule makes sense and is easily applied when the first Chapter 13 case is not yet completed. However, when the debtor completes the plan payments under a confirmed Chapter 13 plan, 11 U.S.C. § 1328(a) provides in part that, "as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided by the plan." Indeed, certain certifications need to be made, and the discharge does not discharge the debtor of debts provided for under 11 U.S.C. § 1322(b)(5) among others, but the practical effect is still the same. Where the payments have been fully made, "the discharge is a *fait accompli* and is to be granted without delay. . . . Under such circumstances, where the discharge in the first case is imminent, the *Atkins* rule serves no real purpose." *Burnett*, *2, 2002 Bankr. LEXIS at *5-6. The Court agrees with *Burnett*, and in the circumstances of this case, discharge has been delayed through no fault of the Debtor and the same debts should not have to be dealt with at the same time.

The Court notes that since the last hearing in this case, the docket in Case I reflects that the Chapter 13 Trustee has made a Report of Completion of Plan Payments (Dkt. No. 108), and the

Clerk has issued a Notice to Creditors and Other Parties in Interest Concerning Issuance of Discharge. (Dkt. No. 111). The Debtor had previously filed his Certificate of Compliance with 11 U.S.C. § 1328(a) as well as his financial management course completion certificate. Thus, absent an unusual circumstance, his discharge in Case I should be issued forthwith and Case I will be closed. Given all of the above circumstances, and the fact that Case II was dismissed without notice or opportunity for hearing, the Debtor's motion to vacate the Order of dismissal entered December 4, 2015 will be granted, and Case II will be reinstated on the Court's active docket.[4] The Court notes that it makes no ruling on *Burnett's* "omnipresent requirement of good faith," *see Burnett*, at *2, 2002 Bankr. LEXIS at *2, as that is an evidentiary matter on which Bayview will be further opportunity to pursue, after notice and hearing, should it elect to do so.[5]

The Court's decision to reinstate and Bayview's motion to confirm inapplicability of stay lead to the next question: what was the effect of the foreclosure sale conducted on December 2, 2015? It is void and of no effect. The law is well settled in the Fourth Circuit that the stay comes into existence "automatically" and "immediately" upon the filing of a petition in bankruptcy. *Shaw v. Ehrlich*, 294 B.R. 260 (W.D. Va. 2003). As Judge Turk observed in *Shaw*, "the Fourth Circuit debated [in *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir, 1989)] whether bad faith filings should be dismissed at the early stages of the bankruptcy process due to

---

[4] The Court notes that the first version of Local Rule 1017-2 came into effect July 1, 1989. Upon inquiry, the Court has not found any other bankruptcy court in the Fourth Circuit with a similar local rule. Given the extensive case law developed since Local Rule 1017-2's inception, the Court intends to inquire of the Chief Judge of this Court whether a local rules committee should be convened to consider whether this rule should be eliminated, or at a minimum, revised or amended to require notice and opportunity for hearing before a case is dismissed.

[5] Bayview filed a motion to dismiss as Docket Entry No. 18 in Case II. However, one cannot dismiss a case that is already dismissed. Bayview's motion to dismiss will be reinstated on the Court's docket, and if Bayview intends to pursue that motion, it should promptly obtain a hearing date. Should Bayview wish to supplement or amend its motion based on the Court's ruling, leave is granted to do so within ten (10) days of the Court's order entered contemporaneously herewith.

the clear ineligibility of the bad faith petitioner for relief, but the court never doubted that, until the case was dismissed, the automatic stay existed to protect the debtor…." *Shaw*, 294 B.R. at 268.

It is generally accepted that a foreclosure sale conducted in violation of the automatic stay is void. *In re McCrimmon*, 536 B.R. 374, 375 (Bankr. D. Md. 2015) and cases cited therein. As stated in *McCrimmon*,

> The notion that the automatic stay may be annulled to validate otherwise void acts is contemplated by the express provisions of § 362 of the Bankruptcy Code. Courts generally hold that this includes the power to grant relief retroactively to validate actions taken in violation of the automatic stay. *See, e.g., In re Myers,* 491 F.3d 120, 127 (3d Cir. 2007) ("this Court and others have held that actions in violation of the stay, although void (as opposed to voidable), may be revitalized in appropriate circumstances by retroactive annulment of the stay"); *In re Siciliano,* 13 F.3d 748, 751 (3d Cir. 1994) ("inclusion of the word "annulling" in the statute indicates a legislative intent, to apply certain types of relief retroactively and validate proceedings that would otherwise be void *ab initio* "); *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 909–10 (6th Cir. 1993); *Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178–79 (5th Cir. 1989); *Albany Partners v. Westbrook (In re Albany Partners),* 749 F.2d 670, 675 (11th Cir. 1984) ("§ 362(d) permits bankruptcy courts, in appropriately *limited* circumstances, to grant retroactive relief from the automatic stay"). While annulment of the automatic stay should not be granted lightly due to the importance of the automatic stay, "bankruptcy courts have wide discretion in weighing the factors and determining what constitutes cause to annul the stay." *Shaw v. Ehrlich,* 294 B.R. 260, 272 (W.D.Va. 2003) (affirmed by *Wiencko v. Ehrlich (In re Wiencko),* 2004 U.S.App. LEXIS 10174, 2004 WL 1146490, 99 Fed.Appx. 466 (4th Cir.Va., May 24, 2004)).

*McCrimmon*, 536 B. R. at 380-81 (footnotes omitted). The Court recognizes that Section 362(d) of the Bankruptcy Code allows the Court, on request of a party in interest, to grant relief from stay "such as by terminating, *annulling*, modifying, or conditioning such stay . . . ." 11 U.S.C. § 362(d) (emphasis added). However, at this stage of the proceedings, the Court sees no basis for it to depart from the finding that the stay was in effect when the foreclosure sale was conducted and that the foreclosure is void. That the case was dismissed and reinstated or that Bayview

may have given the purchaser a foreclosure trustee's deed in the interim does not make it any less so.

## CONCLUSION

The Court concurs with Judge Tice's comment in *Bullock* that "[e]ven thought I agree in general that a debtor should not have multiple pending bankruptcy cases, the court nevertheless must retain the ability to treat varying situations in an equitable manner an in keeping with the purposes of the Code." *Bullock*, 206 B.R. at 393. Likewise, "simultaneous filings are disfavored and ought to be permitted only in exceptional circumstances." *Burnett*, at *2. This Court finds this case fits within the exception.

For all of the above reasons, the Debtor's motion to reinstate this case will be granted and the Debtor's Chapter 13 case will be reinstated on the Court's docket effective immediately. The order of dismissal entered December 4, 2015 is vacated. The stay of 11 U.S.C. § 362(a) shall be reimposed effective with the entry of the order entered contemporaneously herewith. Bayview's motion to confirm inapplicability of stay is denied, and the foreclosure sale conducted by Bayview on December 2, 2015 is determined to be void and of no effect. However, the Court makes no finding whether the Debtor's current case is filed in good faith, and the Court reserves ruling on Bayview's motion to dismiss pending further hearing. To the extent he has not already done so, the Debtor shall promptly file all schedules and other required pleadings and papers due upon filing. A separate order shall issue.

ENTER this the 4th day of February, 2016.

_____
UNITED STATES BANKRUPTCY JUDGE